Thank you, Your Honor. May it please the Court, my name is Phil Pearson. I'm here on behalf of the Plaintiff Appellant. This case involves an explosion that occurred in June of 2000 that occurred in a bakery on Bainbridge Island. Approximately a year before that, the defendant, Appellee, sold a commercial oven used to the Blackbird Bakery, who was operating that oven on June 1, 2000 when it exploded. The contention that was dismissed by the trial court was that this oven had been sold by the defendant without a purge control system. A purge control system is a means whereby propane gas, which was used to fuel the oven, could be flushed out of the oven prior before it began operation to keep it from exploding. The commercial oven that was sold by the defendant to the Blackbird Bakery did not have one of these, and it was the contention of the Plaintiff Appellant that that violated a UCC-implied warranty of merchantability. That claim was dismissed by the trial court, as well as the trial court's decision to not give several jury instructions instructing the jury that it would have been negligence on the part of the defendant to have sold this particular oven without a purge control system. The specific argument that the Plaintiff believes the trial court erred with respect to was it concluded that a section of the Washington Administrative Code, which required the installation of a purge control system on the oven in question, did not apply to the situation before the court. Because it didn't govern sale, wasn't that the reasoning? That is. And do you agree or disagree with the proposition that the regulation does not, in fact, govern the selling event? The regulation does not. However, what it is, Appellant's contention is, is that under Washington law, a statute or administrative regulation may define a duty in negligence, according to the test set out in Restatement 2nd towards Section 286. And under the restatement, the question is not, does the statute apply to the defendant, but is it meant to protect the plaintiff? And I believe the court's choice of from whose perspective to look at the statute from defines whether or not it applies or not. Well, in a way, yes. But if the duty is on a different person, an employer, then logically, it would be fine to sell the oven without the protective device, so long as the recipient puts on what needs to be put on. In other words, it doesn't necessarily imply that the sale of the unprotected item is improper. The wording, the specific wording of the administrative regulation that you are referring to, which is cited to in the briefs, that would be correct, Your Honor. The argument here, though, is that under the restatement of 2nd of Taurus and the two cases cited to in our brief, in deciding whether or not that administrative regulation should be applied to the particular situation involved, the perspective is from the proposition of whether or not, first of all, the plaintiff is meant to be protected by what is addressed in the statute. In this particular instance, I don't think there can be any argument. Well, that may be, but I guess my question is by whom. It's like if you had a rule that, I'm just trying to think of an analogy, if you had a rule that there had to be trigger locks on weapons if they're kept within 100 feet of a school in your house, that doesn't mean that the seller is responsible necessarily to do that. I guess there seems to me to be sort of a disconnect between the idea that the protection has to get there somehow and the seller back at an earlier point in time. We take that back to the essence of a UCC warranty. There are five elements to the implied warranty of merchantability, and I don't think that four of those five are really in dispute. What is in dispute is whether or not this oven was fit for its ordinary purpose. That's the test. Now, our argument is basically and has been from the very beginning that an oven that cannot be used because it does not have a required safety device most certainly should not be sold without such a device. And the UCC implied warranty pertains to the sale. And the test is whether or not it's fit for its ordinary purpose. And if an individual for some reason wanted a gigantic commercial oven of this type, they could do it and not violate any regulations by buying the oven that was bought in this case, correct? I'm sorry. You're all right. Well, if an individual decided they wanted one of these ovens, which is not necessarily likely, but let's assume that just one individual person wants it. They're not an employer of anybody. They're just going to use it. Is there anything that makes the oven unfit for use by that person, even under your theory? Absolutely, Your Honor, because if you're selling them something that doesn't have a protective device to keep it from exploding, and you buy it and it explodes, then you bought something that was unsafe. And under the UCC, that violates the implied warranty of merchantability. And you have a cause of action. Counsel, on a different point, it seems to me that the record is quite incomplete. We did not get transcripts of the court's oral opinion. We didn't get transcripts of what took place when the instructions were argued. So I'm finding myself not in a position to even address some of these issues that you're talking about. Your Honor, I think that goes to the second question concerning the negligence cause of action and whether or not ---- And also it goes to we didn't get a transcript of the judge's decision about merchantability. Your Honor, I'm trying to remember the specific days of the trial and when the decisions were handed down. And in your briefing, you don't cite in your brief to the transcript pages. There's nothing that helps me at all. Your Honor, I went back and looked at that with respect to the issue as to whether or not the jury instruction should or should not be given. I would be forced to concede with the Court, and that is correct. In fact, what we cited to is happening on April 26th. The second to the last day, in fact, occurred on the last day, the 27th. So we were in error from the very beginning of the submission of our briefing. It seems to me you made some big errors in how you handled ordering transcripts and supplements to the transcripts. It's a professional thought up there that I see. Your Honor, let me just explain. In the course of determining what the record was, a question arose as to who was going to pay for what. And that was an argument that was presented to the trial court. By the time it was – it came due for plaintiff appellate to submit its opening brief, the trial court had not decided that issue. Well, usually you order it and say we'll find out later who's going to pay, and somebody agrees to pay in the interim to the court reporter. I mean, that's no excuse for not getting them timely. Your Honor, all I can do at this point in time is state that I would respectfully disagree. There was a significant argument as to how much the trial transcript to order and who was to pay for it. That issue was submitted prior to when briefs were due to the trial court. That decision was not – that argument was not decided by the trial court. What we're left with is trying to figure out what we should do about that. And there is a rule that is sometimes applied that if the party bringing the appeal does not present sufficient material, whether by virtue of argument or record, to demonstrate the correctness of their arguments, then they can't prevail. In other words, that the person bringing the appeal has the responsibility to bring a sufficient portion of the record to demonstrate where the mistake was made by the trial court. Is there any reason why we should not apply that standard so that if there is a deficiency in being able to review part of your argument that that would be – you would simply lose on that point? Your Honor, I think, first of all, the appellee has only raised that with respect to the second aspect of this case. Correct. I believe that's right. And that having been said, I believe there is a sufficient basis on the record if the court disagrees. I'm not in a position right now, based on the absence of what Judge Fletcher indicated is not in the record, to take issue with the fact that if it's not in the record, then the court would have no choice but to rule against plaintiff – plaintiff appellant on the second aspect of the appeal. Let's go to the first issue. We're hampered there also in the lack of record citations as to, you know, what would support your argument. And all I can divine, maybe I'm missing something, is they have the expert's testimony, Mr. Lewis. Yes. Is there any other testimony you pointed to that you think is a basis for us to benchmark the district court's ruling against? That was all that was presented at trial, Your Honor. Okay. I think at this juncture I would reserve the remainder of my time for rebuttal. You certainly may do that. We'll hear now from Ms. Smetka. Good morning. May it please the Court, I'm Pauline Smetka, and I represent the defendant of Kelly Certified. That's sort of the trade name of it. Owned by Joan and Wayne Reisenhower. What Certified did six years ago, six and a half years ago now, was sell used oven parts. They bought it in parts. They sold it in parts. It was the bakery, specifically Jeff Shepard and his co-owner of the bakery, Heidi Umfenauer, who decided what they wanted, the size, what they were willing to pay. They wanted it used. He contacted the bakery. He contacted Certified to say this is what I'm looking for. Certified says we think we have one. And he then picked it up, just as Certified got it, in pieces, on pallets, and he's the one that took it back to the bakery with his employee and installed it without any help, any assistance, or any advice from Certified, with one exception. Somewhere during the installation process, there was a question about what sort of caulking to use in putting it together. There was nothing about any safety issue or the functioning of it, anything like that. In fact, Mr. Shepard specifically went to the manufacturer of the oven, then known as Hobart, and Suburban Propane, which was putting together the gas and piping for it, for any of his questions that he had concerning the oven. What brings us here today is two contentions by Charter Oak, the insurance company for the paid a bit of money for property damage. There is no personal injury issue before the court. There wasn't at the trial court level. It's purely property damage. So Charter Oak, in its subrogation claim against Certified to collect property damages it had paid under its policy, raises two issues that it thinks the trial court erred at, the first one being the dismissal on a directed verdict at the close of the plaintiff's case of the implied warranty of merchantability claim. The second is related to that, but the Charter Oak contends that the trial court erred in not giving one of its or a handful of its requested instructions, all of which basically relate to some to the implied warranty issue, which wasn't really an issue at that point. It had been dismissed, so, of course, those instructions aren't going to be given. But primarily, the desired instruction, I believe it was number 25, plaintiff's proposed 25, that the violation of the Washington administrative code regulation could be considered as evidence of negligence. As you pointed out during Charter Oak's argument, that WAC, as well as the CFR that parallels it that Charter Oak recites in its briefs, apply only to the aspects of bakery equipment other than selling. It is our position that neither the WAC nor the Federal regulation, the OSHA regulation, govern the conduct of certified in buying and selling used bakery equipment. Therefore, it would have been wrong for the trial court to have given such an instruction because the instruction is not simply that you may use this as evidence of negligence in general, but that the argument would have been that certified was in violation of this regulation, and therefore, the jury could find that this is evidence of negligence by certified. We submit that none of those regulations out of that chapter apply to certified as a seller of used bakery equipment, even if it was a seller of new equipment. They don't apply. The trial court properly did not give that instruction. I want to clarify your last argument. You seem to be suggesting that even if the existence of the regulation is evidence of negligence because it describes a generally expected standard of how such an oven is configured, but that the instruction proposed was a wrong statement of law by saying that the code section applied directly. Is that what you're trying to say or no? No. No. The actual proposed instruction on that one was Plaintiff's Proposed Instruction 33, and it read in its entirety, the violation, if any, of a statute, ordinance, or administrative rule is not necessarily negligence, but may be considered by you as evidence in determining negligence. And that's just a standard whipping case argument. Okay. So that is okay. So you're not saying that it was that their proposed instruction incorrectly stated the law. You are saying instead that that concept just doesn't apply here. Yes. Okay. I misunderstood what you were trying to say earlier. I must have misspoken. I'm sorry about that. No. It was a standard correct statement of the law if the law applied, because what it was saying is the violation. Therefore, the jury would have to find a violation. And how can certified violate a regulation that does not apply to it? So that's why we think that the Court properly did not give that instruction. Now, if there were evidence apart from the regulation that the regulation, although not applicable, describes a general standard in the industry of how something should be configured and sold, what sort of instruction would follow from that? I do not think that it would have been simply the instruction of the violation of a statute and then quoting the regulation, which is what ordinarily would be. It would be something more like a statement that this sets forth a standard of conduct, or it would be phrased in such a way. Now, mind you, Plaintiff did not ask for this at trial, but I would assume that it would be phrased in such a way that would enable Plaintiff to have then argued that somehow this is a standard of care applicable to everyone that has anything to do with bakery equipment, including selling it. And therefore, you should find that this is evidence of negligence. And is it your view of the record that we have in front of us that there's insufficient evidence to raise that issue for the jury? Well, certainly on the record before you there's insufficient evidence. I don't think you've got the entire trial transcript before you. But I don't think there was any law to allow the instruction to the jury about this particular WAC and how it could be, how the violation of it could have anything to do with certified conduct. If certified, it's not bound to follow that regulation. Now, this may get to the other point that first issue. Yes. And my question there is whether, I guess there's this Federal, this NFPA regulation that Mr. Lewis talks about and says, well, we've got this regulation and it's a good standard of care because it's a safety item. And the question is, is that enough to get the case to the jury? Well, here's the difference with that. The NFPA is the National Fire Protection Association, sort of an industry organization of certain people. It is not a governmental body. None of their standards, at least the only ones I would know about, would be in Washington. And it's not adopted in Washington as anything that is applicable to those in that particular industry. What Washington has are the WACs and our, and the enabling WISHA statutes, and those are applicable to employers for benefit of employees. I think the question is somewhat different, though. At least my question in my head, and I understood Judge McEwen's to be similar, and that has to do with the implied warranty of merchantability, not with, not with whether that's a binding regulation, but whether it describes a standard that should be applied in selling ovens to bakeries. I think the reason it does not is that that standard also applies to the design and manufacture, primarily to the design of those things. And Certified is not a designer. So it gets back to the issue of whether the seller of used equipment is required to sell only that, and in its entirety, every single piece that may be required to meet some other industry-type standard applicable to persons other than those selling those products. If I might ask you if the, if you sell a used oven, and I come into you and I say, I need an oven, and I need it to do these things, is it your position that because it's a used oven that you don't have any obligation, if I'm buying the oven under the pretense of having it do these certain things, you don't have to meet my requirements because you're selling a used oven? Well, the standard with respect to what constitutes a merchantable good is lower when you're talking about used equipment than it would be if it were new, and we've cited cases to that effect. And I think what you're getting to, Your Honor, is something about a particular transaction between two particular people where there is some discussion and perhaps negotiation over precisely what is being looked for and the purchaser's desires for the functioning of that, which really gets more towards the implied warranty of fitness for a particular purpose, which they're not even there's no evidence of that. There's no, well, we don't have the transcripts, so that's why we don't know what there was. We only have Mr. Lewis. So if it's not, if it's only an implied warranty. Of merchantability. Of merchantability. Yes. And does it matter that you're selling pieces as opposed to the whole product? I think that does a little bit because that, it shows that it's not fully set up that they can go in and take a look at it and say, yes, this is exactly what I want, or no, it's not, or ask any questions. Counsel, I'm a little bit worried about this piece argument because they thought they were buying an oven and you thought you were selling an oven, and that it had all the pieces to be an oven. And in fact, we submit, Your Honor, that it was. It operated for two or three years from when it was manufactured until the unfortunate explosion. I understand that, but that's why I find it a little bit difficult to hear you argue. I mean, we just sold pieces. Well, it is true. It was sold in pieces. I believe the record shows that we thought it was, it had all of the pieces necessary, as perhaps did the charter of the bakery once they set it up. At the time this oven was manufactured and sold, the purge was an option. Now, neither of the parties knew about that, and I believe that's in the record before you. Neither of the parties knew about that, but it was certainly possible for Mr. Shepard, on whom those wax were, it posed the duty on him to comply to ensure that it was safe, that he could have purchased that option had he wished it. But that's kind of on a different point. You were trying to say that you had a lower standard if you were just selling pieces, and I think you sold an oven. Yes. I meant to say there's a lower standard if you're selling used equipment than if you're selling brand new. The fact that it was in pieces, frankly, the new ones come that way as well. It just comes on pallets and you put it together because these things are rather large. But with respect to whether something is merchantable, we believe that the law says that it what that means is that it must pass without objection in the trade to a significant number. There was absolutely no evidence whatsoever in the record of plaintiff's case, which is the one that it would have to be since they have to meet their burden of proof to avoid that directed verdict. There was no evidence in the record to suggest that the oven would have been objected to by a significant enough number of purchasers. Indeed, the only evidence in the record is that it was manufactured without it. It was went through three purchases without any objection. So there is simply no evidence from which you can infer. I don't believe even Mr. Lewis saying from some experience that he might have that he knows that this would not have passed without objection in the trade or that there would have been people that objected to it. So that's one of the bases for supporting the directed verdict, is they did not meet their burden of proving that it was not merchantable at the time it was sold. If I might address one other point, and unless you have further questions, as an alternate ground for affirmance of the trial court's ruling, is the fact that there was a settlement before the lawsuit was brought against Certified, Charter Oak, having already paid out its funds for its insurers, pursued a claim against the manufacturer of the oven and settled with the manufacturer of the oven, and it was subsequent to that settlement, which did involve Charter Oak, that the suit against Certified was brought. This was the subject of our summary judgment motion, a portion of our summary judgment motion. We raised that. That was denied. We raised that as a counterappeal, if you would, that was dismissed without prejudice because we can assert that as an alternate ground, which we do here. There was a complete release with a long description of everyone who's being released by this settlement, and it included retailers and distributors. And we think we fell within that. Now, Charter Oak's response on that is that there is a special definition for distributors, and Certified does not fall within that. Well, the release document to which Charter Oak was a party did not define what was meant by those terms. And if you read that, it's fairly all-inclusive that anyone in that chain of commerce with that oven, because it went all the way back to the one that manufactured it, would be covered by this release. And so we assert that that is an alternate ground on which this Court can affirm the trial court's dismissal of the claims against Certified. Thank you, counsel. Mr. Pearson, you have some rebuttals that are remaining, I believe. Your Honor, if I might, let me begin by ending with the last argument put forth by Ms. Schmetka. I believe that the release referred to did not deal with retailers but stocked with distributors. In the supplemental brief that we submitted, we cited various cases which have held that the term distributor is commonly understood applies to wholesalers, not retailers. There was not any mention, we believe, in the release concerning a retailer. We believe that the defendant appellee was clearly a retailer and, therefore, did not fall within the ambit of the release. It simply didn't apply to them and, consequently, it should not bar the present ability of the plaintiff to proceed with the lawsuit that it did. Going back to the UCC argument, with respect to the basis both at the summary judgment argument, which was pretrial, as well as the time of trial. First of all, all the evidence that was presented in the court came from Mr. Lewis. That was the universe of evidence presented to the court, and that is part of the record. Is there anything in Mr. Lewis's testimony that goes beyond his statement that this is a safety device and these are the fire protection standards and it's nice to have a safety device on there? I believe his testimony was to the effect that National Fire Protection Association Standard 86 required that this purge control system come with the oven, that it did not. That was submitted both at the summary judgment level and at trial and was part of the record before you, as well as the fact that it violated WSHA provisions, a WAC, as well as a counterpart OSHA provision, which required the same thing. You have a private standard, a federal standard, and a state standard that all said this oven, given its size and how it was powered, should come with a safety device. It did not. The safety device was one of the components that should have been sold that, when assembled, made up the oven that was then turned on to bake items. The real question is whether or not this oven was fit for its intended purpose under the UCC in being sold by defendant without purge control system. The evidence at trial was that it did not have that device, and we contend that, in and of itself, was sufficient to get to the jury. Above and beyond that, it was required to possess this by a private industry standard and by two governmental standards, and consequently, based on that one of evidence, at a minimum, we believe it the cause of action for violation of a unified warranty should have gone to the jury. It did not, and we believe that was an error of law to the trial court. Thank you, counsel. The case just argued is submitted. We appreciate both parties' arguments. And that brings us to the final case on our morning docket, which is Holland America Line v. Something I'm going to mispronounce that looks like Varsua Finland Oy.
judges: B. Fletcher, Graber, McKeown